IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| TAURUS BROWN § | | |
|     TDCJ-CID #877566 § | | |
| v. § | | C.A. NO. C-08-170 |
| § | | |
| CHRISTOPHER CARR, ET AL. § | | |

**ORDER REGARDING PLAINTIFF'S MOTION FOR PRODUCTION OF
DOCUMENTS AND DEFENDANTS' MOTION FOR A PROTECTIVE ORDER**

This is a civil rights action filed by a state prisoner pursuant to 42 U.S.C. § 1983. Pending is plaintiff's motion to compel the production of documents. (D.E. 44). Pending also are defendants' response to plaintiff's motion to compel and motion for protective order, (D.E. 49), as well as defendants' supplemental response to plaintiff's motion to compel. (D.E. 50).

**I. PROCEDURAL HISTORY**

Plaintiff is an inmate in the Texas Department of Criminal Justice, Correctional Institutions Division, and is currently incarcerated at the Clements Unit in Amarillo, Texas. He filed this action on May 23, 2008, complaining that certain McConnell Unit officers and officials filed a false disciplinary case against him in retaliation for his proceeding to trial in another action, Brown v. Carr, et al., C.A. No. C-04-471 (S.D. Tex.), which also involved certain of the defendants named herein.[1] He named as defendants in this case seven prison officials: Officer Christopher Carr; Major Aurelio Ambriz; Captain Evelyn Castro; Officer J. Brasher; Sergeant Ford; Sergeant Arroyos; and Lieutenant Gallegos. A Spears[2] hearing was conducted on June 5,

---

[1] In C.A. No. C-04-471, plaintiff originally sued twelve McConnell Unit officers and officials, three of whom he names again in this action: Officer Carr; Lieutenant Gallegos; and Major Ambriz.

[2] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985).

2008. The following allegations were made in plaintiff's original complaint, or at the hearing.

For the past three years, plaintiff's administrative segregation classification has been S-1, entitling him to certain privileges because he had not received a major disciplinary case since leaving the McConnell Unit some three years prior. From January 18, 2008 through January 31, 2008, plaintiff was temporarily housed at the McConnell Unit because he was the plaintiff in a civil rights action that had proceeded to trial in federal district court, C.A. No. C-04-471. On Friday, January 21, 2008, the jury was still deliberating in C.A. No. C-04-471, and plaintiff was returned to the McConnell Unit that evening.

On Saturday, January 22, 2008, Officer Carr, a former defendant in C-04-471, came to plaintiff's cell, along with a five-man extraction team, and told him that he was being charged with possession of a weapon because a knife had been found in his cell. Officer Carr ordered plaintiff to exit his cell for a strip search. Officer Brasher, who was assigned to plaintiff's floor that day, and Lieutenant Gallegos, the ranking officer, were also present. Plaintiff exited his cell without incident, and complied with the strip search. The officers ordered plaintiff to lift his scrotum, to spread his rear end, to place a finger in his anus, and then immediately to place his fingers in his mouth to show that nothing was secreted in it. Sergeant Arroyos searched plaintiff's cell and confiscated certain legal papers.

At the conclusion of his trial, plaintiff was returned to the Estelle Unit. A month later, at the end of February, plaintiff received a disciplinary case, written by Officer Brasher charging him with possession of a weapon. A hearing was held on the weapons charge at the Estelle Unit in March, and in April, the case was dismissed and plaintiff's classification was restored to S-1.

Plaintiff claims that Officer Carr and Officer Brasher planted the weapon in his cell, and

then forced him to submit to the humiliating strip search. He claims that Major Ambriz, Sergeant Ford, and Lieutenant Gallegos falsified documents stating that he had a weapon, and were also present during the search of his person and cell. He claims that Sergeant Arroyos confiscated his legal documents in denial of access to the courts.

## II.  DISCUSSION

**A.     Defendants' Motion for Protective Order.**

Defendants assert qualified immunity as a defense to plaintiff's discovery request. Qualified immunity provides officials "not just immunity from liability, but immunity from suit," including discovery. Vander Zee v. Reno, 73 F.3d 1365, 1368 (5th Cir. 1996) (citations omitted). Indeed, the Fifth Circuit has explained that "[e]ven limited discovery on the issue of qualified immunity 'must not proceed until the district court *first* finds that the plaintiff's pleadings assert facts which, if true, would overcome the defense qualified immunity.'" Id. at 1368-69 (citing Wicks v. Mississippi State Employment Serv., 41 F.3d 991, 994 & n.10 (5th Cir. 1995) (emphasis in original)).

The threshold question in a qualified immunity analysis is "'whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right.'" Mace v. City of Palestine, 333 F.3d 621, 623 (5th Cir. 2003) (quoting Price v. Roark, 256 F.3d 364, 369 (5th Cir. 2001)); accord Saucier v. Katz, 533 U.S. 194, 201 (2001). If a constitutional violation is alleged, the Court must next determine "whether the right was clearly established–that is whether 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Mace, 333 F.3d at 624 (quoting Price, 256 F.3d at 369). Once a defendant has invoked the defense of qualified immunity, the burden

shifts to the plaintiff to show that the defense is inapplicable. McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam).

  **1. Step One: Constitutional Violation.**

A prisoner's First Amendment right of access to courts includes the right to seek redress through an established prison system. See Jackson v. Cain, 864 F.2d 1235, 1248-49 (5th Cir. 1989). Prison officials may not retaliate against a prisoner for exercising this right. Woods v. Smith, 60 F.3d 1161, 1164 (5th Cir. 1995). Because it is well established that prison officials may not retaliate against a prisoner for exercising the right to file lawsuits and administrative grievances, actions that might not otherwise be offensive to the Constitution can give rise to a constitutional claim if taken in retaliation for the exercise of the protected conduct. Id. at 1165 ("an action motivated by retaliation for the exercise of a constitutionally protected right is actionable, even if the act, when taken for a different reason, might have been legitimate") (citations omitted).

To state a valid § 1983 claim for retaliation, "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." Jones v. Greninger, 188 F.3d 322, 324-25 (5th Cir. 1999) (citing McDonald v. Steward, 132 F.3d 225, 231 (5th Cir. 1998)). An inmate must allege more than his personal belief that he is the victim of retaliation. Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997) (citation omitted). Mere conclusory allegations of retaliation will not withstand a summary judgment challenge. Woods, 60 F.3d at 1166. The Fifth Circuit has explained that an "inmate must produce direct evidence of motivation or, the more probable scenario, 'allege a chronology of events from which retaliation

may plausibly be inferred.'" Id.

The purpose of allowing retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising their constitutional rights. Morris v. Powell, 449 F.3d 682, 686 (5th Cir. 2006). However, some acts, even though they may be motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights. Id. Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim. Id. For example, a job transfer from the commissary to the kitchen might be *de minimis*, while a transfer to a more dangerous unit might constitute an adverse retaliatory act. Id. at 687.

Thus, to prevail on his retaliation claim against defendants, plaintiff must establish that: (1) defendants had retaliatory intent based on plaintiff exercising his First Amendment right of access to the courts; (2) the retaliatory act was more than inconsequential or *de minimis*, and was capable of deterring a person of ordinary firmness from further exercising his constitutional rights; and, (3) but for the retaliatory motive, the adverse action would not have occurred. McDonald, 132 F.3d at 231.

Plaintiff complains of retaliatory acts occurring in January 2008 because he went to trial in C.A. No. C-04-471 at that time. That trial began on January 23, 2008, and on January 28, 2008, the jury found in favor of defendants Aurelio Ambriz, Eileen Kennedy and Alfonso Castillo. Based on the verdict, those defendants were dismissed and final judgment was entered against plaintiff. The timing is sufficient to support a chronology of events from which retaliation can be inferred. In addition, the retaliatory acts complained of, a disciplinary case resulting in the loss of privileges, and an intrusive strip search, are more than *de minimis*.

These allegations establish that defendants retaliated against plaintiff for exercising his constitutional rights. He has therefore alleged facts sufficient to establish a retaliation claim.

**2. Step Two: Objective Reasonableness.**

Step two of the qualified immunity analysis requires courts to determine whether the defendant's conduct "was objectively reasonable in light of clearly established law." Thompson v. Upshur County, Tex., 245 F.3d 447, 457 (5th Cir. 2001) (citations omitted). "Fair warning" is the central concept in this analysis. Bush v. Strain, 513 F.3d 492, 501-02 (5th Cir. 2008) (citations omitted). The Fifth Circuit has explained that "[t]he law can be clearly established 'despite notable factual distinctions between the precedents relied on..., so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'" Kinney v. Weaver, 367 F.3d 337, 350 (5th Cir. 2004) (en banc) (quoting Hope v. Pelzer, 536 U.S. 730, 740 (2002)). Thus, "when the defendant moves for summary judgment based on qualified immunity, it is the plaintiff's burden to demonstrate that all reasonable officials similarly situated would have then known that the alleged acts of the defendants violated the United States Constitution." Thompson, 245 F.3d at 457 (citation omitted).

At all relevant times, plaintiff had a clearly established right to be free from retaliation for exercising his constitutional rights. Morris v. Powell, 449 F.3d 682, 686; Jones, 188 F.3d at 324-25. Thus, defendants were on notice that they could not retaliate against him by allegedly planting a weapon in his cell, and then forcing him to submit to the humiliating strip search. Accordingly, defendants' motion for a protective order on qualified immunity grounds is DENIED.

**B.       Plaintiff's Motion to Compel the Production of Documents.**

The Federal Rules of Civil Procedure allow discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). They also limit a court's discretion to allow discovery, however. Courts are to prevent discovery that is "unreasonably cumulative or duplicative." Fed. R. Civ. P. 26(b)(2)(C)(i). The Rule 26 also directs courts to limit discovery when it is more burdensome than beneficial. See Fed. R. Civ. P. 26(b)(2)(C)(iii) (enumerating factors to consider in weighing benefit and burden). In his request for production of documents, plaintiff requested 46 different categories of documents. (D.E. 49-3).

Defendants argue generally that plaintiff's motion to compel should be denied because there has been no Rule 26(f) conference. (D.E. 50, at 2-3). Of course, plaintiff is an inmate in segregation. Attorneys with the Office of the Texas Attorney General regularly refrain from engaging in conferences that are required. Indeed, defendants' counsel indicated in her certificate of conference that she did not confer with plaintiff regarding her motion because he is incarcerated. Id. at 4. Defendants offer no support that a Rule 26(f) conference is necessary in this situation.

Additionally, defendants argue that plaintiff's request appears to be seeking discovery for other litigation as opposed to this action. Id. at 3. Unfortunately, defendants make this argument without noting any specific document request.

In document request #1, plaintiff seeks his complete prison record. It is unclear why this is relevant. Moreover, it is overly broad. Accordingly, plaintiff's document request #1 is DENIED.

In document request #2, plaintiff seeks all of his grievances from January 2004 until the present. Defendants appear to argue that such a request is not relevant. (D.E. 50, at 3). Such a request may be overly broad and irrelevant as many grievances would be against individuals unrelated to this action, including individuals who have never worked at the McConnell Unit. Defendants are ORDERED to produce any grievances filed by plaintiff against any defendant since 2004.

In document request #3, plaintiff seeks all of his medical records from January 2004 until the present. Defendants appear to argue that such a request is not relevant. (D.E. 50, at 3). Such a request may be overly broad and irrelevant as many medical records would be unrelated to this action. Defendants are ORDERED to produce any medical records related to injury involving any defendant since 2004.

In document request #4, plaintiff seeks all of use of force videotapes and pictures from January 2004 until the present. Defendants appear to argue that such a request is not relevant. (D.E. 50, at 3). Such a request may be overly broad and irrelevant as many use of force tapes and pictures would be unrelated to this action. Defendants are ORDERED to produce any use of force videotapes and pictures involving plaintiff and any defendant since 2004.

In document requests #5, #7, #19, #20, and #42, plaintiff seeks information regarding the names and location of various inmates at the McConnell unit during the time period of the alleged retaliation. These requests appear to seek information regarding potential witnesses in this action. Thus, they potentially may be relevant. Accordingly, plaintiff's document requests #5, #7, #19, #20, and #42 are GRANTED.

In document request #6, plaintiff seeks a copy of all incoming and outgoing property

8

inventory slips from January 2008 until the present. Defendants do not raise any specific objection to this request. It potentially may be relevant. Accordingly, plaintiff's document request #6 is GRANTED.

In document requests #8-12, #17, #26-28, #35-38, #43, and #46,[3] plaintiff seeks information regarding TDCJ policies. Defendants argue that these "are equally accessible by Plaintiff." (D.E. 50, at 3). However, they do not provide any support such as an affidavit from a prison official who indicates that such TDCJ documents are available to inmates. It is unclear if these documents are available in prison law libraries. Moreover, plaintiff is in administrative segregation, which restricts his direct access to the law library. Finally, prison officials regularly restrict the amount of paperwork, including copies of TDCJ policies and manuals, that inmates may store in their cells. These documents potentially may be relevant. Accordingly, plaintiff's document requests #8-12, #17, #26-28, #35-38, #43, and #46 are GRANTED.

In document request #13, plaintiff seeks a copy of a videotape and documents from January 26, 2008. Defendants do not raise any specific objection to this request. Nonetheless, the reference to a videotape and documents from January 26, 2008 is vague. Accordingly, plaintiff's document request #13 is DENIED.

In document request #14, plaintiff seeks all documents regarding the search of his cell. Defendants do not raise any specific objection to this request. Such documents potentially may be relevant. Accordingly, plaintiff's document request #14 is GRANTED.

In document request #15, plaintiff seeks a copy of all ingress and egress logs from

---

[3] Defendants do not object to document request #46, but it appears to be a TDCJ policy document request.

9

January 18, 2008 until February 1, 2008. Defendants do not raise any specific objection to this request. Such documents potentially may be relevant. Accordingly, plaintiff's document request #15 is GRANTED.

In document request #16, plaintiff seeks redacted copies of all defendants' disciplinary and grievance files. Defendants appear to argue that such a request is not relevant. (D.E. 49, at 2). Defendants are ORDERED to produce any disciplinary files for incidents involving plaintiff and any defendant.

In document request #18, plaintiff seeks a copy of the segregation activity log from January 26, 2008. Defendants do not raise any specific objection to this request. It potentially may be relevant. Accordingly, plaintiff's document request #18 is GRANTED.

In document request #21, plaintiff seeks any complaints by plaintiff or on his behalf to the Director of the TDCJ, or the TDCJ ombudsman from January 2004 until the present. Defendants appear to argue that such a request is not relevant. (D.E. 50, at 3). Such a request may be overly broad and irrelevant as many such complaints would be against individuals unrelated to this action, including individuals who have never worked at the McConnell Unit. Defendants are ORDERED to produce any complaints by plaintiff or on his behalf to the Director of the TDCJ, or the TDCJ ombudsman involving any defendant since 2004.

In document request #22, plaintiff seeks any documents regarding his transfer January 18, 2008 until February 1, 2008. Defendants do not raise any specific objection to this request. Nonetheless, it is unclear how this is arguably relevant to plaintiff's claims. Accordingly, plaintiff's document request #22 is DENIED.

In document request #23, plaintiff seeks the names of all transportation officers who

transported him from the McConnell Unit to the federal courthouse and back from January 22, 2008 through January 28, 2008. Defendants do not raise any specific objection to this request. Nonetheless, this is not properly a request for production of documents, but should be sought through interrogatories. Accordingly, plaintiff's document request #23 is DENIED.

In document request #24, plaintiff seeks a copy of documents regarding his transportation from the McConnell Unit to the federal courthouse and back from January 22, 2008 through January 28, 2008. Defendants do not raise any specific objection to this request. It potentially may be relevant. Accordingly, plaintiff's document request #24 is GRANTED.

In document request #25, plaintiff seeks the name of the McConnell Unit property officer who inventoried plaintiff's property January 18, 2008. Defendants do not raise any specific objection to this request. Nonetheless, this is not properly a request for production of documents, but should be sought through interrogatories. Accordingly, plaintiff's document request #25 is DENIED.

In document request #29, plaintiff seeks all disciplinary tapes from January 2004 until the present. Defendants do not raise any specific objection to this request. Such a request may be overly broad and irrelevant as many disciplinary tapes would concern individuals unrelated to this action, including individuals who have never worked at the McConnell Unit. Defendants are ORDERED to produce any disciplinary tapes involving plaintiff and any defendant since 2004.

In document requests #30 and #31, plaintiff seeks any documents, including pictures, regarding the weapon alleged to have been found in plaintiff's cell on January 26, 2008. Defendants do not raise any specific objection to this request. Such documents potentially may be relevant. Accordingly, plaintiff's document requests #30 and #31 are GRANTED.

In document request #32, plaintiff seeks a copy of the writ of habeas ad testificandum that were served on the Texas Department of Criminal Justice in <u>Brown v. Carr, et al.</u>, C-04-471. This is a document that arguably is in the records of the defendants or their employer. It potentially may be relevant. Accordingly, plaintiff's document request #32 is GRANTED.

In document request #33, plaintiff seeks a copy of his trial testimony in <u>Brown v. Carr, et al.</u>, C-04-471. A review of the record in that action indicates that a trial transcript was never ordered and thus does not exist. Accordingly, plaintiff's document request #33 is DENIED.

In document request #34, plaintiff seeks "copies of all of the classification documents in his file." It is unclear why this is relevant. Moreover, it is overly broad. Accordingly, plaintiff's document request #34 is DENIED.

In document request #39, plaintiff requests a copy of a picture of the front of the cell "72" on E pod. Defendants do not object to this request. It is unclear whether a current picture of the cell exists. Defendants are not obligated to take such a picture, but if one currently exists dated from January 2008 to the present, then it is ORDERED that a copy be produced to plaintiff.

In document request #40, plaintiff requests a copy of a picture where the alleged weapon was found. Defendants do not object to this request. It is unclear whether a current picture of the cell exists. Defendants are not obligated to take such a picture, but if one currently exists dated from January 2008 to the present, then it is ORDERED that a copy be produced to plaintiff.

In document request #41, plaintiff seeks copies of first shift ingress and egress logs for May 12, 2004, June 7, 2008, and October 12, 2004. Defendants appear to argue that such a request is not relevant. (D.E. 50, at 3). It is unclear why this is relevant. Accordingly,

plaintiff's document request #41 is DENIED.

In document request #44, plaintiff seeks a copy of documents regarding defendant Christopher Carr's work assignment at the McConnell Unit on January 26, 2008. Defendants do not raise any specific objection to this request. Such documents potentially may be relevant. Accordingly, plaintiff's document request #44 is GRANTED.

In document request #45, plaintiff seeks a copy of documents regarding the officer who relieved defendant Carr at the McConnell Unit on January 26, 2008. Defendants do not raise any specific objection to this request. Such documents potentially may be relevant. Accordingly, plaintiff's document request #45 is GRANTED.

### III. CONCLUSION

Accordingly, defendants' response to plaintiff's motion to compel and motion for protective order, (D.E. 49), is DENIED. Plaintiff's motion to compel the production of documents, (D.E. 44), is granted in part and denied in part. Defendants are ORDERED to produce any documents addressed above within three weeks of the date of this order.

ORDERED this 15th day of October 2008.

_____
BRIAN L. OWSLEY
UNITED STATES MAGISTRATE JUDGE