IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| TAURUS BROWN | § | |
|    TDCJ-CID #877566 | § | |
| v. | § | C.A. NO. C-08-170 |
| | § | |
| CHRISTOPHER CARR, ET AL. | § | |

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

In this § 1983 civil rights action, plaintiff claims that defendants knowingly interfered with his right of access to courts and retaliated against him for exercising that right. (D.E. 1). Defendants Christopher Carr, Aurelio Ambriz, Joseph Brasher, Abram Arroyos, Marcus Ford, and Andres Gallegos move for summary judgment on the grounds that they are entitled to qualified immunity and that plaintiff has failed to establish that his constitutional rights were violated. (D.E. 83, 115). Plaintiff has filed responses. (D.E. 108, 112, 118). For the reasons stated herein, the defendants' motion for summary judgment is hereby GRANTED.

### I. JURISDICTION

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331. Upon consent of the parties, (D.E. 13, 37), this case was reassigned to a magistrate judge to conduct all further proceedings, including entry of final judgment. (D.E. 40); see also 28 U.S.C. § 636(c).

### II. BACKGROUND

Plaintiff is in the custody of the Texas Department of Criminal Justice, Correctional Institutions Division ("TDCJ-CID"), and at all times relevant to the facts of this lawsuit was incarcerated at the McConnell Unit in Beeville, Texas. He filed suit on May 23, 2008, naming as defendants: (1) Officer Christopher Carr; (2) Major Aurelio Ambriz; (3) Captain Evelyn

Castro; (4) Officer Joseph Brasher; (5) Sergeant Marcus Ford; (6) Sergeant Abram Arroyos; and (7) Lieutenant Andres Gallegos. (D.E. 1, at 12-13). He claimed that the defendants planted a weapon on him and falsified a disciplinary charge against him, as well as forcing him to endure a humiliating strip search, in retaliation for a lawsuit he had filed, and that Sergeant Arroyos had destroyed his legal documents pertaining to the lawsuit. Id.

On June 5, 2008, a Spears hearing was held.[1] Following the Spears hearing, on June 26, 2008, an order was entered dismissing plaintiff's claims against Captain Castro and against all defendants for conspiracy. (D.E. 19). His claims against the remaining defendants for retaliation and against Sergeant Arroyos for interfering with his right of access to courts were retained. Id.

On February 12, 2009, defendants filed the instant motion for summary judgment. (D.E. 83). On April 23, 2009, plaintiff filed a response. (D.E. 108). On April 30, 2009, plaintiff supplemented his response. (D.E. 112). On May 21, 2009, defendants supplemented their motion. (D.E. 115). On June 8, 2009, plaintiff responded to the supplemented motion. (D.E. 118).

### III. SUMMARY JUDGMENT EVIDENCE AND UNCONTESTED FACTS

In support of their motion for summary judgment, defendants offer the following:

Ex. 1: Affidavit of Officer Christopher Carr;

Ex. 2: Affidavit of Lieutenant Andres Gallegos;

Ex. 3: Affidavit of Major Aurelio Ambriz;

---

[1] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

  Ex. 4: Affidavit of Sergeant Abram Arroyos;

  Ex. 5: Affidavit of Officer Joseph Brasher;

  Ex. 6: Affidavit of Sergeant Marcus Ford;

  Ex. 7: Offense Report dated January 26, 2008;

  Ex. 8: Shift Roster for Administrative Segregation on January 26, 2008;

  Ex. 9: Docket Sheet for Brown v. Carr, et al., No. 2:04cv471 (S.D. Tex.);

  Ex. 10: TDCJ-CID Administrative Directive for Offender Searches:

  Ex. 11: TDCJ-CID Use of Force Plan;

  Ex. 14: Affidavit of Lieutenant Andres Gallegos.[2]

(D.E. 83, Exs. 1-11; D.E. 115, Ex. 14).

  In support of his opposition, plaintiff offers the following:

  Ex. 1: Plaintiff's declaration;

  Ex. 2: Declaration of Dwight Byrd;

(D.E. 108).

  The following facts are not in dispute:

  On January 26, 2008, Officer Brasher was assigned to 12 Building, E-Pod in Administrative Segregation. (D.E. 83, Ex. 6, at 1). While conducting a routine security search, he saw a paper pole sticking out from the "rat hole" area of plaintiff's cell. Id. He pulled the pole out of the hole and saw that a piece of metal sharpened into a point was attached to the end of the pole. Id. In accordance with policy, he notified a supervisor that he had found a weapon. Id. at 2. The supervisor that day was Sergeant Arroyos. (D.E. 83, Ex. 5, at 1).

---

[2] Defendants have skipped numbers 12 and 13 in labeling their exhibits. See (D.E. 83, 115).

When Sergeant Arroyos arrived at plaintiff's cell, he ordered plaintiff to exit the cell so that a complete search could be conducted. Id. at 1-2. Plaintiff refused to leave his cell. Id. at 2. Sergeant Arroyos notified Lieutenant Gallegos that plaintiff was refusing to leave the cell. Id. Lieutenant Gallegos came to plaintiff's cell and also ordered him to leave the cell. Id. When plaintiff continued to refuse to exit the cell, Lieutenant Gallegos obtained authorization to use chemical agents, or a five-man extraction team. Id. A five-man team was assembled, and Sergeant Arroyos again ordered plaintiff to leave the cell, after which plaintiff complied. Id.

Once plaintiff exited the cell, he underwent a strip search for contraband. Id. Pursuant to policy, he was asked to run his fingers through his hair and mouth, lift his testicles, turn around and lift one foot at a time, and to spread his buttocks. Id. After the strip search, plaintiff put on his boxers and was handcuffed. Id. His cell was searched. Id. Sergeant Arroyos saw some legal materials during the search, but did not remove them. Id.

After the incident was investigated and the report signed, the offense was graded by Major Ambriz, who was responsible for grading all offense reports signed by the lieutenant over the weekend of January 26 and 27, 2008. (D.E. 83, Ex. 4, at 2). He graded plaintiff's offense as major because it involved a weapon. Id. at 3. Plaintiff was later transferred to the Estelle Unit, where his disciplinary case was dismissed "due to conflicting statements." (D.E. 83, Ex. 8, at 1).

### IV. **MOTION TO STRIKE**

In the reply brief, defendants seek to strike a number of exhibits attached to plaintiff's response. (D.E. 115, at 1). Specifically, they seek to strike Gregory Reed's affidavit as it contains references to hearsay. They also seek to strike reprimand forms relating to Officer Carr, (D.E. 108, at 17); (D.E. 112, at 7-9); (D.E. 113, 2-8); Lieutenant Gallegos, (D.E. 108, at 18); and

4

Sergeant Ford, id. at 19-20. The defendants assert that these reprimand forms are irrelevant to the actions at issue in this case, and that the forms are also impermissible character evidence. (D.E. 115, at 2).

First, plaintiff has not provided an affidavit by Gregory Reed. The only statement by Mr. Reed that appears in the record is part of the disciplinary report filed as evidence by the defendants. (D.E. 83, Ex. 7). This statement is unsworn and is not probative summary judgment evidence. See Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 515 (5th Cir. 2001) (finding that an unsworn statement "is not competent summary judgment evidence because it does not comply with the requirements of Federal Rule of Civil Procedure 56(e).") (citation omitted). However, based both on defendants' motion and plaintiff's response, it appears that the parties are actually referring to the statement by Mr. Byrd, who is also known as Charles Reed. See (D.E. 108, at 16).

Defendants do not identify what portions of Mr. Byrd's statement are objectionable, but merely state that the statement contains references to out-of-court statements and "non-verbal conduct" presented for the truth of the matter asserted. (D.E. 115, at 1). As to the officers' conduct, Mr. Byrd adequately alleges that he had personal knowledge of that conduct because he observed it from his cell. See (D.E. 108, at 16). Accordingly, with respect to the officers' conduct he testified that he observed, Mr. Byrd's statement is relevant and admissible. See Fed. R. Civ. P. 56(e); Fed. R. Evid. 401-02. Regarding any officer statements discussed by Mr. Byrd, out-of-court statements offered for the truth of the matter asserted are hearsay; accordingly, these statements will not be considered. See Fed. R. Evid. 801, 802.

With respect to the reprimand forms offered, defendants are correct when they assert that the issues raised are irrelevant to the matter at hand. The reprimands were issued for violations of policy that did not involve plaintiff. While the defendants characterize this evidence as impermissible character evidence, plaintiff asserts that they are evidence of habit, and are accordingly admissible.

Plaintiff presents reprimand forms indicating that Officer Carr left his duty post on March 27, 2008, (D.E. 108, at 17); that he failed to report a use of force on March 31, 2008, (D.E. 112, at 7-9); that on October 7, 1999, he used profanity when calling the switchboard, (D.E. 113, at 2); and that on December 11, 1997, he witnessed another officer challenge an inmate to a fight and failed to report it. (D.E. 113, at 7). He presents a reprimand form indicating that on June 13, 2006, Lieutenant Gallegos failed to report a use of force. (D.E. 108, at 18). With respect to Sergeant Ford, the reprimand forms indicate that on November 15, 2007, he failed to include all the witnesses to a use of force in his report, (D.E. 108, at 20); and that on January 13, 2001, he was involved in an unreported use of force. Id. at 19. None of these incidents involved plaintiff.

Plaintiff first asserts that these disciplinary reports are admissible pursuant to Rule 404(b) of the Federal Rules of Evidence. See (D.E. 118, at 1). However, plaintiff fails to demonstrate how events happening after the incident described in his complaint, after he left the McConnell Unit, or events occurring several years before that incident, and before he was assigned to the McConnell Unit, could possibly demonstrate intent, knowledge, motive, or preparation on the part of these officers to retaliate against plaintiff. To the extent that plaintiff seeks to prove animus on the part of defendants, these reports are not admissible for that purpose because they do not involve him. See Kanida v. Gulf Coast Med. Personnel LP, 363 F.3d 568, 581-82 (5th

Cir. 2004) (rejecting as evidence of retaliatory motive in employment discrimination action evidence that employer had reacted poorly to another's employee's request for overtime compensation). Therefore, these disciplinary reports are not admissible pursuant to Rule 404(b).

Plaintiff next characterizes the disciplinary reports as habit evidence, admissible pursuant to Rule 406 of the Federal Rules of Evidence. As the Fifth Circuit has noted, "[e]vidence of habit is not lightly established." Jones v. S. Pac. R.R., 962 F.2d 447, 449 (5th Cir. 1992). The Jones court explained that "[t]o offer evidence of habit, a party must at least demonstrate a 'regular practice of meeting a particular kind of situation with a specific type of conduct.'" Id. (citation omitted). In Jones, the plaintiff sought to establish habit by introducing evidence that the defendant railroad company's engineer had been cited several times in the past for safety violations during his career. Id. The court found that "[the engineer's] prior safety infractions had little to do with what happened on the day of the wreck." Id. Accordingly, the court held that evidence of the engineer's prior safety infractions was inadmissible to prove that he was negligent on the day of the wreck in question. The Fifth Circuit has likewise found that plaintiff's four prior convictions for public intoxication over a three and a half year period were inadmissible to show that he was intoxicated on the night that he was run over by the defendant's train. Reyes v. Miss. Pac. R.R. Co., 589 F.2d 791, 795 (5th Cir. 1979).

Here, with respect to Lieutenant Gallegos, plaintiff presents evidence of only one disciplinary infraction. With respect to Sergeant Ford, he presents evidence of two disciplinary infractions in a six-year period. Finally, with respect to Officer Carr, he presents evidence of four infractions over an eleven year period. This evidence simply does not demonstrate the frequency that characterizes habit. See Jones, 962 F.2d at 450 ("Several such incidents over the

course of a long career are not much evidence that Haley was generally a careless engineer. They can hardly be characterized as habit."). Accordingly, the disciplinary reports are not admissible pursuant to Rule 406. The defendants' motion to strike with respect to the reprimand forms is GRANTED.

## V. **DISCUSSION**

**A.        Summary Judgment Standard Of Review.**

Summary judgment is appropriate when there is no disputed issue of material fact, and one party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Courts must consider the record as a whole, considering all pleadings, depositions, affidavits, and admissions on file in the light most favorable to the non-movant. Caboni v. General Motors Corp., 278 F.2d 448, 451 (5th Cir. 2002).

The party seeking summary judgment bears the initial burden of demonstrating an absence of a genuine issue of material fact and informing the court of the basis for its motion by identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which support its contention. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Williams v. Adams, 836 F.2d 958, 960 (5th Cir. 1988). Any controverted evidence must be viewed in the light most favorable to the non-movant, and all reasonable doubts must be resolved against the moving party. Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990).

If the moving party makes the required showing, then the burden shifts to the non-movant to show that a genuine issue of material fact remains for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); Fields v. City of S. Houston, 922 F.2d 1183,

1187 (5th Cir. 1991). The non-movant cannot merely rest on the allegations of the pleadings, but must establish that there are material controverted facts in order to preclude summary judgment. Fed. R. Civ. P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). Summary judgment is proper if the non-movant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof. Celotex, 477 U.S. at 322-23; ContiCommodity Servs., Inc. v. Ragan, 63 F.3d 438, 441 (5th Cir. 1995).

**B.** **Plaintiff's Claims For Injunctive Relief And Damages In Defendants' Official Capacities Are Dismissed.**

Plaintiff has sued defendants in their official and individual capacities for money damages. "A suit against a prison employee in his official capacity is the same as a suit against the entity the employee represents." Kossie v. Crain, 602 F. Supp.2d 786, 790 (S.D. Tex. 2009) (citing Kentucky v. Graham, 473 U.S. 159, 166 (1985)). "The Eleventh Amendment bars a suit for money damages against a state or state agency." Id. (citing Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996)). A judgment may not be entered against a state officer in his official capacity for violating federal law in the past. Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993).

To the extent plaintiff is suing defendants in their official capacities for money damages, those claims are barred by the Eleventh Amendment, and they are dismissed.

**C.** **Qualified Immunity.**

Defendants move for summary judgment on the grounds of qualified immunity. The qualified immunity determination involves a two-step analysis: first, "'whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right.'" Mace v. City of Palestine, 333 F.3d 621, 623 (5th Cir. 2003)

9

(quoting Price v. Roark, 256 F.3d 364, 369 (5th Cir. 2001)). If a constitutional violation is alleged, the Court must next determine "whether the right was clearly established – that is 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Id. at 624 (quoting Price, 256 F.3d at 369). Once defendants have invoked the defense of qualified immunity, the burden shifts to plaintiff to show that the defense is inapplicable. McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam).

Historically, the threshold question in a qualified immunity analysis is whether a constitutional right would have been violated on the facts alleged. Saucier v. Katz, 533 U.S. 194, 200 (2001). The Supreme Court recently revisited the issue of qualified immunity in Pearson v. Callahan, __ U.S. __, 129 S. Ct. 808 (2009), addressing whether the two-step analysis set forth in Saucier must be strictly adhered to, or could the steps be taken out of sequence. Id. at 816-18. Ultimately, the Court concluded that the two-step procedure need not be followed sequentially, while noting that it remained beneficial to follow it in many cases. Id. at 818.

    **1.**    **Plaintiff's denial of access to the courts claim fails.**

Plaintiff claims that Sergeant Arroyos denied him access to the courts when he destroyed his legal materials during a security search, causing him to lose his jury trial in Brown v. Carr, et al., C.A. No. 04cv471 (S.D. Tex).

    **a.**    **Step 1: Constitutional Violation.**

Prisoners have a constitutionally protected right of access to the courts. See Lewis v. Casey, 518 U.S. 343, 350 (1996) (citing Bounds v. Smith, 430 U.S. 817, 821 (1977)). The right does not guarantee any "particular methodology but rather the conferral of a capability – the

capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." Id. at 356; see also Jones v. Greninger, 188 F.3d 322, 325 (5th Cir. 1999) (per curiam) (the right provides a reasonable opportunity to file nonfrivolous legal claims challenging convictions or conditions of confinement). Because the right of access is not a "freestanding right," the plaintiff must demonstrate actual injury resulting from an alleged denial of access to the courts. Lewis, 518 U.S. 351; see also Chriceol v. Phillips, 169 F.3d 313, 317 (5th Cir. 1999) (per curiam). Without a showing of an actual injury, a plaintiff lacks standing to pursue a claim of denial of access to the courts. Lewis, 518 U.S. at 349.

To meet the standing requirement, "plaintiff must allege *personal injury* fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." Raines v. Byrd, 521 U.S. 811, 818 (1997) (quoting Allen v. Wright, 468 U.S. 737, 751 (1984)) (italics in original). Plaintiff "must establish that he has a 'personal stake' in the alleged dispute and that the alleged injury suffered is particularized as to him." Id. at 819 (citation omitted). Specifically, to succeed on a claim of denial of access to the courts, he must show that he lost an actionable claim, or was prevented from presenting such a claim because of the alleged denial. See Lewis, 518 U.S. at 356. He must show "that his position as a litigant was prejudiced" as a direct result of the denial of access. Eason v. Thaler, 73 F.3d 1322, 1328 (5th Cir. 1996) (per curiam).

Although he did not prevail in Brown v. Carr, et al., No. 2:04cv471 (S.D. Tex 2004), plaintiff does not identify any legal materials that were lost and how their loss adversely impacted his civil rights action. Indeed, he had appointed counsel representing him. He provides nothing more than his conclusory assertion that his legal materials were destroyed by

11

Sergeant Arroyos to support his claim that he was denied access to courts. He fails to demonstrate how the purported loss of these legal materials prevented him from prevailing at trial. Accordingly, plaintiff has failed to establish that Sergeant Arroyos violated his constitutional right of access to courts.

### b. Step 2: Objective Reasonableness.

For a right to be clearly established under the second step of the qualified immunity analysis, "[t]he contours of that right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). However, when the plaintiff fails to state a constitutional violation, as in this case, the Court need not examine whether the defendants' actions were reasonable. See Saucier, 533 U.S. at 201 (if the facts alleged do not establish that the officer's conduct violated a constitutional right, then the qualified immunity analysis need proceed no further and qualified immunity is appropriate). Plaintiff has failed to controvert Sergeant Arroyos's sworn testimony that he did not remove plaintiff's legal records from his cell. He has not established that his constitutional rights were violated. Accordingly, Sergeant Arroyos is entitled to qualified immunity on plaintiff's denial of access to the courts claim, and his motion for summary judgment on this claim is GRANTED.

### 2. Plaintiff's retaliation claim fails.

Plaintiff claims that defendants retaliated against him for exercising his First Amendment rights by filing a lawsuit in federal court. He alleges that they planted a weapon in his cell, falsified disciplinary reports, and forced him to endure a humiliating strip search.

### a. Step 1: Constitutional Violation.

To prevail on a retaliation claim, an inmate must establish four elements: "(1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." McDonald v. Steward, 132 F.3d 225, 231 (5th Cir. 1998). The inmate must be able to point to a specific constitutional right that has been violated. Jones v. Greninger, 188 F.3d at 325. Moreover, the inmate must allege more than his personal belief that he is the victim of retaliation. Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997). Conclusory allegations of retaliation are insufficient. Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995). The inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred. Id. (citation omitted). Causation requires an inmate to show that but for the retaliatory motive, the adverse action would not have occurred. McDonald, 132 F.3d at 231.

In addition, the Fifth Circuit has held that an inmate's retaliation claim must allege more than a de minimis adverse act. Morris v. Powell, 449 F.3d 682, 684-85 (5th Cir. 2006). In Morris, the plaintiff alleged that he had been assigned to a less desirable job in the kitchen, from pot scrubber to butcher, in retaliation for filing complaints about a commissary official. Id. at 684. After an appeal and remand, the district court found as a matter of first impression in the Fifth Circuit that a prisoner must allege more than a de minimis retaliatory act to proceed with a claim of retaliation. Id. The district court further found, without discussion, that Morris' alleged retaliation as evidenced by assignment to a less desirable job was de minimis, and dismissed his claim. Id.

Additionally, in the context of First Amendment claims, the Morris court explained that courts had often addressed the "quantum" of retaliation necessary to support a § 1983 claim. See id. at 685-86. The Fifth Circuit has adopted analysis from the District of Columbia Circuit that an inmate's retaliation claim must allege acts that "would chill or silence a person of ordinary firmness from future First Amendment activities." Id. at 685 (citation omitted). The Morris court concluded that, even if the job transfers were motivated by retaliation and he suffered a few days discomfort, there was no evidence that the job transfers were more than de minimis. Id. at 687.

In this case, plaintiff has failed to demonstrate that the asserted harm would not have occurred but for the alleged retaliatory motive. He has not controverted these defendants' testimony that they acted pursuant to policy after finding contraband in his cell; indeed, he does not challenge their assertion that a weapon was found in his cell. His conclusory assertion that the weapon was planted does not suffice to establish that it was planted, or, even assuming that it was, that these officers were aware that the weapon did not belong to him.

### i.     Plaintiff's claim against Officer Carr.

Plaintiff asserts that Officer Carr came to his cell on January 26, 2008, and told him that he was being charged with possession of a weapon because a knife had been found in his cell. (D.E. 19, at 3). He ordered plaintiff to exit the cell for a strip search; plaintiff complied, and was forced to place his fingers in his anus and then into his mouth to show that he had not secreted anything in those areas. Id.

In an affidavit, Officer Carr admits that he was a defendant in plaintiff's prior lawsuit, but denies being present on plaintiff's unit on the date of the incident in question. (D.E. 83, Ex. 1, at

3). He denies any involvement in the strip search or the weapons case against plaintiff. Id. at 4. Plaintiff provides two statements, one from himself and one from another inmate, to controvert Officer Carr's claims. He asserts that he saw Officer Carr on the unit on the day of the search, but he does not state that Officer Carr was actually involved in the strip search or in the disciplinary charge against him. See (D.E. 108, at 15). Likewise, Dwight Byrd swears that he saw Officer Carr on the night before the incident in question, and that he saw Officer Carr after plaintiff was searched for contraband, but he does not state that he observed Officer Carr participating in the strip search. Id. at 16. There is nothing in the record indicating that Officer Carr was involved in plaintiff's disciplinary case; e.g., he did not sign any of the paperwork, nor did he participate in plaintiff's disciplinary hearing. The issue of fact as to whether Officer Carr was on the unit on January 26, 2008 is not a material fact. Plaintiff has failed to demonstrate any personal involvement by Officer Carr in the alleged retaliatory act. Accordingly, his claim against Officer Carr fails, and Officer Carr is entitled to summary judgment in his favor on plaintiff's retaliation claim.

### ii.     Plaintiff's claim against Officer Brasher.

Plaintiff asserts that Officer Brasher was also involved in the retaliatory strip search and weapons charge. In an affidavit in support of defendants' motion for summary judgment, Officer Brasher asserts that he saw a weapon sticking out of the rat-hole area under plaintiff's cell door while he was conducting a routine security search of the unit. (D.E. 83, Ex. 5, at 2). After finding the weapon, he contacted a supervisor. Id. He returned to the cell as part of an extraction team when plaintiff refused to leave his cell. Id. at 3. After plaintiff left the cell, he

was required to undergo a strip search in accordance with TDCJ policy. Id. Officer Brasher asserts that he did not know plaintiff prior to this incident. Id. at 4.

Again, plaintiff fails to controvert the facts stated by Officer Brasher in his affidavit. Plaintiff does not state that there was no weapon in the rat-hole. See (D.E. 108, at 15). He provides a deposition by written questions of Officer Rene Gutierrez, who testified that he did not see a weapon taken from plaintiff by Officer Brasher. (D.E. 112, at 16). However, Officer Gutierrez does not say that Officer Brasher did not find a weapon. Id. In fact, he indicates that he does not recall whether he and Officer Brasher were escorting an inmate together that day. Id. Officer Gutierrez does not contradict Officer Brasher's statement that he found a weapon in the rat-hole of plaintiff's cell. Accordingly, plaintiff has failed to controvert Officer Brasher's assertion that he found contraband in plaintiff's cell and responded in the appropriate manner in accordance with policy. Officer Brasher is entitled to summary judgment in his favor on plaintiff's claim of retaliation.

### iii. Plaintiff's claim against Lieutenant Gallegos.

Plaintiff claims that Lieutenant Gallegos was a defendant in his prior lawsuit and he asserts that Lieutenant Gallegos falsified disciplinary reports indicating that he had a weapon, and that he was present for the search of his cell and his person. In an affidavit, Lieutenant Gallegos testified that he became involved in the disciplinary case against plaintiff after the weapon was found and plaintiff refused to leave his cell. (D.E. 83, Ex. 2).[3] Sergeant Arroyos notified him that plaintiff was refusing to exit the cell, and he obtained authorization to assemble

---

[3] The affidavit attached to defendants' original motion for summary judgment is unsigned. However, the contents of this affidavit are incorporated into Lieutenant Gallegos's later sworn affidavit. (D.E. 115, Ex. 14).

a five-man extraction team. Id. at 4. The search of plaintiff and his cell was conducted according to TDCJ-CID policy. Id. After an investigation, Lieutenant Gallegos approved the offense report written by Officer Brasher. Id. He was not a defendant in plaintiff's prior lawsuit, nor did he testify or participate in any way in that lawsuit. Id. at 2; see also id., Ex. 9.

Plaintiff offers no evidence that Lieutenant Gallegos's actions were taken for any other reason than as a legitimate response to the presence of a weapon inside his cell. He does not establish that no weapon was found in his cell. He has failed to establish a genuine issue of material fact as to Lieutenant Gallegos's actions with respect to searching his cell and filing the offense report. Accordingly, Lieutenant Gallegos is entitled to qualified immunity with respect to plaintiff's retaliation claim and is granted summary judgment in his favor.

### iv. Plaintiff's claim against Major Ambriz.

Plaintiff also asserts that Major Ambriz falsified documents stating that he had a weapon and participated in the strip search at his cell. (D.E. 19). In an affidavit, Major Ambriz admits that he was a defendant in plaintiff's prior lawsuit, but states that he was dismissed from the case on the second day of trial. (D.E. 83, Ex. 3, at 2). He asserts that he was not involved in the search of plaintiff's cell, nor was he involved in the disciplinary case. Id. at 3. His sole involvement in the case was to grade the disciplinary report provided to him on the Monday following the incident. Id. He graded the disciplinary report as a major offense because it involved a weapon. Id. at 4. He grades every disciplinary report involving a weapon as a major offense, regardless of which inmate is involved. Id.

Plaintiff fails to controvert the testimony by Major Ambriz. There is no evidence that Major Ambriz was present when plaintiff's cell and person were searched, nor is there any

evidence that Major Ambriz would have graded the disciplinary report as a minor offense absent a retaliatory motive against plaintiff. Thus, plaintiff fails to establish that Major Ambriz did not simply take appropriate action in response to a report that a weapon had been found in his cell. Accordingly, Major Ambriz is entitled to qualified immunity and is granted summary judgment in his favor.

### v. Plaintiff's claim against Sergeant Ford.

Plaintiff asserts that Sergeant Ford falsified documents stating that he had a weapon in his cell and that he participated in the search of his cell. Sergeant Ford provided an affidavit in support of defendants' motion for summary judgment, but it is unsigned and is therefore not competent summary judgment evidence. See Okoye, 245 F.3d at 515. However, plaintiff has failed to provide any evidence that Sergeant Ford falsified any documents with respect to the weapon found in his cell. Specifically, he fails to controvert defendants' evidence that a weapon was present in his cell; moreover, he fails to controvert evidence that the strip search was conducted in accordance with TDCJ policy. Accordingly, he fails to establish any constitutional violation on the part of Sergeant Ford; defendant is entitled to qualified immunity, and is granted summary judgment in his favor.

### vi. Plaintiff's claim against Sergeant Arroyos.

Plaintiff asserts that Sergeant Arroyos was also personally involved in the search of his cell and his person. (D.E. 19). In an affidavit, Sergeant Arroyos testified that he was called to plaintiff's cell after Officer Brasher found the weapon because he was the supervisor on duty that day. (D.E. 83, Ex. 4, at 2). When he arrived at plaintiff's cell, he ordered him to exit the cell so that a full search might be conducted. Id. at 2-3. After plaintiff refused to exit, Sergeant

Arroyos notified Lieutenant Gallegos and a five-man team was assembled.  Id. at 3.  Plaintiff eventually complied with the order to exit.  Id. at 3.  He underwent a strip search in accordance with TDCJ policy; he was not asked to place his finger in his anus as he claims.  Id. at 3.

Plaintiff has provided no evidence to controvert Sergeant Arroyos' statement.  He has provided no evidence to controvert defendants' evidence that a weapon was found in his cell, and he provides no evidence that the stip search was conducted in the manner asserted in his complaint.  Accordingly, Sergeant Arroyos is entitled to qualified immunity, and he is granted summary judgment in his favor with regard to plaintiff's claim of retaliation.

          **b.**     **Step 2: Objective Reasonableness.**

Because plaintiff has failed to demonstrate a constitutional violation, the Court need not examine whether the defendants' actions were reasonable.  See Saucier, 533 U.S. at 201.  Nonetheless, each individual defendant's actions were a reasonable response to the presence of a weapon in plaintiff's cell.  Accordingly, defendants are entitled to qualified immunity and are granted summary judgment in their favor.

### VI.  CONCLUSION

For the reasons stated herein, defendants' motion for summary judgment, (D.E. 83), is GRANTED.  Defendants' motion to strike the reprimand forms attached as exhibits to plaintiff's response, (D.E. 115), is also GRANTED.  Plaintiff's claims for money damages against defendants in their official capacities are barred by the Eleventh Amendment, and defendants are granted summary judgment in their favor dismissing those claims.  Defendant Arroyos is granted summary judgment in his favor on plaintiff's access to the courts claim.  Defendants are granted summary judgment in their favor on plaintiff's retaliation claim.  Plaintiff's claims against the

defendants in their individual capacities for money damages and in their official capacities for injunctive relief are dismissed with prejudice.

    ORDERED this 2nd day of July 2009.

                                                 _____
                                                 BRIAN L. OWSLEY
                                                 UNITED STATES MAGISTRATE JUDGE